UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIP SIDES,<br><br>    Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-03893-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT**<br><br>Re: Dkt. Nos. 170, 173, 179, 186 |

Pending before the Court are motions for judgment under Federal Rule of Civil Procedure ("FRCP") 52(a), filed by Defendant Cisco Systems, Inc. ("Cisco"), Defendant UnitedHealthcare Insurance Company ("UHIC," and collectively with Cisco, "Defendants"), and Plaintiff Andrew "Kip" Sides ("Mr. Sides" or "Plaintiff"). *See* Dkt. Nos. 170 ("Cisco Mot."); Dkt. No. 173 ("UHIC Mot."), Dkt. No. 179 ("Pl. Mot.").[1] On March 14, 2019, all parties argued their motions.

The Court has carefully considered the arguments and evidence presented by the parties and, for the reasons set forth below, **GRANTS** Defendants' motions for judgment and **DENIES** Plaintiff's cross motion for judgment. The following constitutes the Court's Findings of Fact and Conclusions of Law under FRCP 52(a).

## I. FINDINGS OF FACT[2]

Mr. Sides, who is currently proceeding *pro se* in this case, seeks review of Defendants' alleged failure to extend benefits under Cisco's healthcare plan, which is covered by the Employee

---

[1] Mr. Sides filed an unopposed motion to file excess pages for his motion for judgment *after* he already filed his oversized motion, in violation of Civil Local Rule 7-2. *See* Dkt. No. 186; Civil L.R. 7-2. Mr. Sides' motion for judgment totals 43 pages, almost double what is permitted under Civil Local Rule 7-2. *See* Civil L.R. 7-2. However, given that Mr. Sides is *pro se* and Defendants do not oppose his motion, the Court **GRANTS** Mr. Sides' motion to file excess pages.
[2] To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

Retirement Income Security Act of 1974 ("ERISA"). Dkt. No. 57, Third Amended Complaint ("TAC") ¶ 8. Mr. Sides also seeks equitable relief in the form of an injunction that requests Defendants to, *inter alia*, give an accounting of his past claims, administer periodic and proper accounting for future benefits, provide visibility into the claims processing process, and grant Mr. Sides access to Cisco's benefits case management system. *Id*. ¶¶ 5–17. Mr. Sides also seeks declaratory relief. *Id*. ¶¶ 2–4.

Because the administrative record is voluminous, the Court focuses on the key facts upon which it bases its conclusions.[3]

### A. The Plan

Since around January 2000, Mr. Sides has been a participant of Cisco's Retiree Medical Access Plan (the "Plan"), which is one of the component benefits of Cisco's Welfare Benefit Plan. *Id*. ¶ 1. The Plan is governed by ERISA and is self-funded, meaning benefit payments are funded by Cisco. *See* Dkt. No. 171-1, Ex. 2, 2014 Summary Plan Description, at CIS 000355, 000367.[4] Cisco retirees become eligible to participate in the Plan if, on the last day of their employment, they meet the following three requirements: (1) they are enrolled, or eligible to enroll in, a Cisco group medical plan; (2) they are at least 50 years old; and (3) they completed at least five years of service at Cisco. Ex. 2 at CIS 000266. Coverage can continue past the age of 65. *Id*. Cisco is the Plan Administrator and named fiduciary under the Plan and ERISA, Ex. 1 at CIS 001326, and UHIC is the claims administrator of the Plan. Ex. 2 at CIS 000322–24. As claims administrator,

---

[3] Mr. Sides attaches over 2,000 pages of exhibits to his opposition to Cisco's motion for judgment. *See* Dkt. Nos. 192–97. These were not part of the administrative record and include, *inter alia*, handwritten notes, email exchanges, and excel spreadsheets. *Id*. It does not appear that these documents were produced to Defendants. *See id*. In the Court's order denying Mr. Sides' request for additional discovery, the Court specifically denied Mr. Sides' request for discovery beyond the administrative record and held that additional discovery outside the administrative record was not necessary to address his claims. Dkt. No. 155 at 2–3. Mr. Sides does not offer any persuasive evidence to support his conclusory assertion that the administrative record is incomplete. *See* Pl. Mot. at 3. In fact, UHIC addresses the allegedly missing documents and provides citations for documents Mr. Sides was not able to locate. *See* Dkt. No. 190 at 6–15. For any documents not in dispute, UHIC has supplemented the administrative record. Dkt. Nos. 190, 209. Therefore, the Court will not consider Mr. Sides' declaration and attached exhibits in making its factual findings.
[4] All exhibits referenced herein are attached to the Declarations of Karen Wiens in support of Cisco's motion for judgment. Dkt. Nos. 171, 205. These exhibits include true and correct copies of the Cisco Welfare Benefit Plan document and the Summary Plan Descriptions ("SPD") from 2012–2017.

UHIC makes benefit determinations and administers appeals according to the Plan. *Id*. Under the terms of the Plan, both Cisco and UHIC have discretionary authority to interpret the terms and determine eligibility for benefit payments. *Id*. CIS 000355. Unless it can be shown that the interpretation was arbitrary and capricious, any interpretation or determination shall be given full force and effect. *Id*.

To file a claim, a participant must complete a UHIC claim form and include the participant's relevant personal information, an itemized bill from the provider that includes the patient diagnosis, dates of service, procedure codes and description of the services rendered, charges for each service rendered, the provider's name, address, and tax identification number, and the date on which the injury or sickness began. *Id*. CIS 000365–66. Benefits are paid "as soon as [UHIC] receives the necessary written proof" to support the claim to verify it is covered under the Plan. *Id*. Generally, a claim should be filed within 90 days after the date the expenses were incurred, but if a participant is not able to meet the deadline due to no fault of the participant, the claim will still be accepted if the participant files the claim as soon as possible. *Id*. CIS 000321–22. The participant has 24 months to submit medical claims to be considered for reimbursement. *Id*. CIS 000322.

If the claim is denied, the participant will receive a written notice from UHIC, which includes the specific reasons for the denial, specific references to the Plan provisions that support the denial, description of any information needed, a statement that the participant will be provided, upon request, copies of documents relevant to the denied claims, an explanation of the appeals process, and a statement regarding the participant's right to bring an action under ERISA § 502(a) if the claim is denied on appeal. *Id*. CIS 000356.

To appeal a claim denial, a participant must submit a request for an appeal in writing to UHIC within 180 days after receipt of the denial notice, and include reasons for the appeal along with any relevant supporting documentation. *Id*. CIS 000357. Failure to appeal within 180 days results in a final and binding determination. *Id*. After UHIC renders a decision on appeal, a participant may request a level two review: these reviews are conducted by an appeals committee (consisting of at least three people) or by an individual who was not involved in the prior

3

decisions. *Id*. CIS 000358. The participant must submit a request for a level two review within 60 days of the level one appeal decision. *Id*. Failure to submit a request within that timeline results in a final and binding determination. *Id*. Under both levels, UHIC will make its determination within 30 days after receipt of an appeal. *Id*. CIS 000357–58. There are three additional levels of review, but the first two levels are mandatory and must be exhausted before pursuing the three voluntary levels of review. *Id*. CIS 000359–61. A participant may only commence a legal action against Defendants after the participant has gone through the first two levels of review and within a year after UHIC denies a second level appeal. *Id*. CIS 000364.

### B. Mr. Sides' Medical Claims

Mr. Sides claims that under the Plan, he has "always been paid," but has had to face "immense" barriers that have deterred him from maximizing his benefits. TAC ¶ 19. Specifically, Mr. Sides identifies the following 11 "categories" of claims at issue.

#### i. Medical Claim #1 – August 22, 2014 Lab Work at SpectraCell Labs

On September 10, 2014, Mr. Sides submitted a claim for lab panel work done on August 22, 2017 by SpectraCell Labs. AR[5] 001772–75; *see also* AR 001203–07. On October 22, 2014, UHIC sent Mr. Sides an Explanation of Benefits ("EOB") explaining that his claim was denied, because his lab panels were "unproven for the management of [his] condition" and the Plan "only covers proven procedures." AR 001207. For the services to be considered for coverage, Mr. Sides or his physician had to "submit scientific evidence that shows this service is safe and effective for [his] condition." *Id*. UHIC sent Mr. Sides another EOB on December 17, 2014, noting that it had received additional information, but upon review, the "original determination remains unchanged and no additional benefits are payable." AR 001214. The total amount denied was $2,026.44. AR 001209.

On June 12, 2015, Mr. Sides' former counsel, Laurence F. Padway, sent UHIC a letter stating that they were appealing the denial of the claims, but also requested information about why

---

[5] References to AR refers to the administrative record produced to the parties and attached as Exhibit A to the Declaration and Supplemental Declaration of Mabel S. Fairley in support of UHIC's motion. Dkt. Nos. 175, 180–183, 190.

4

the claim was denied and what additional information was required so that Mr. Padway could present the appeal in a meaningful manner. AR 001199. Citing ERISA, Mr. Padway asked for documents "relevant" to UHIC's decision to deny the claim, including invoices from SpectraCell and "claim manuals, policies and procedures relative to the requested benefit or service." AR 001199–200. Mr. Padway noted that once UHIC "furnish[ed] the requested documents," he would "be pleased to complete our submission on appeal." AR 001200.

UHIC sent Mr. Sides an acknowledgment of the June 12, 2015 letter on June 24, 2015, stating that they "received an appeal request or a request on your behalf to review our previous benefit decision." AR 001217. Upon review, if the request "qualifies for an appeal, grievance or complaint," UHIC would come to a decision within 30 days. *Id.*

Mr. Padway wrote another letter to UHIC on July 23, 2015, stating that he wrote to UHIC on "June 12, 2015 to request documents concerning the plan," but had yet to receive a response. AR 001274. UHIC responded on July 14, 2015, noting that UHIC did receive Mr. Padway's previous letter and would send him the coverage decision and explanation by mail. AR 001262. On July 31, 2015, UHIC sent Mr. Sides a letter attaching the supporting documentation used in making the denial determination. AR 001379. This included the claim copy and remark code and the EOBs. *Id.* UHIC could not, however, send copies of plan documents, as those needed to be requested from Cisco, since UHIC was not the Plan administrator. *Id.* The record does not show that Mr. Padway or Mr. Sides ever followed up or submitted an actual appeal.

### ii. Medical Claim #2 – October 23, 2015 Lab Work at SpectraCell Labs

On October 29, 2015, Mr. Sides submitted another claim for SpectraCell lab work performed on October 23, 2015. AR 001776–78. UHIC sent Mr. Sides an EOB on November 30, 2015, denying the claims (amount of $2,026.44) for the same reasons as Medical Claim #1. AR 001158–66. In a letter to UHIC on April 8, 2016, Mr. Padway requested the same information as his June 12, 2015 letter, except related to the October 23, 2015 claims only.[6] AR 001144. This time, Mr. Padway said that this letter "constitue[d] our appeal," but also requested 30 days to

---

[6] The April 8, 2016 letter also included an attempted or "conditional appeal" regarding Medical Claims #3 and #5, which will be discussed at Sections I(B)(iii) and (v), *infra*.

5

supplement the appeal if UHIC provided the requested documents. AR 001144–46. He also noted that they were still "waiting for a response" to his June 12, 2015 letter. AR 001145.

UHIC responded to Mr. Padway's letter on May 4, 2016, requesting that Mr. Padway, pursuant to federal regulations, submit another authorization form with written authorization from Mr. Sides that Mr. Padway was authorized to appeal his claims, with the specific provider and dates of service. AR 001459–61. UHIC still decided to review the denial of the October 23, 2015 SpectraCell lab work claims, and on May 11, 2016 sent its decision via letter to Mr. Sides, copying Mr. Padway. AR 001071–74. In its response, UHIC stated that there was not enough evidence "in the medical literature to conclude that this testing is useful to help make medical decisions or to improve your health," and the Plan did not "cover tests or treatments that are not considered to be effective for your care." AR 001071–72. The letter cited sections from the Plan listing what was excluded, including services that were experimental, investigational, and/or unproven. AR 001072. UHIC acknowledged the request for more documents and informed Mr. Sides that the request had been forwarded to the "appropriate department for review." *Id*. The letter also provided instructions on how to file a second level appeal and specified that a second level appeal had to be sent within 60 days. AR 001073. The record does not show that there was ever a second level appeal.

### iii. Medical Claim #3 – Dr. Simon Tan Services

On August 7, 2015, Mr. Sides submitted a claim for services performed on December 21, 2014 from Dr. Simon Tan, totaling $2,500. AR 001601–02. The claim included an invoice from Dr. Tan for a "Neurobehavioral Exam" and "Neuropsychological Testing by Psychologist." AR 001602. The invoice only included Dr. Tan's address, the description of services provided, CPT (current procedural terminology) codes, and the date of service. *Id*. UHIC then wrote to Dr. Tan on August 25, 2015, requesting that Dr. Tan provide additional information before UHIC could process the claim, including the tax identification number and diagnosis codes. AR 001605. UHIC also sent a copy of the letter to Mr. Sides. AR 001604. UHIC requested the information within 45 days, and said that otherwise the claim would be denied because of the missing information. AR 001605. On September 20, 2015, UHIC sent a follow-up letter to Dr. Tan,

requesting the same information. AR 001611.

UHIC denied the claim on October 19, 2015. AR 001614. The EOB states that the reason for denial was because the requested information was not received on time. AR 001615. Mr. Sides claims that Dr. Tan provided the requested information on October 3, 2015, TAC ¶ 24, but it is unclear from the administrative record *when* Dr. Tan provided the subsequent information. Dr. Tan returned UHIC's second letter requesting information with handwritten notes containing some of the requested information, but it is not clear when this letter was submitted. *See* AR 001619. UHIC sent Dr. Tan another letter on October 29, 2015, requesting the diagnosis codes, and said that it was "holding the patient's claim" so that Dr. Tan could provide UHIC with the requested information. AR 001620. A copy was sent to Mr. Sides. AR 001623. There is no evidence that Dr. Tan subsequently supplied the requested information.

Mr. Padway attempted to appeal the denial in the same April 8, 2016 letter referenced above. AR 001147–48. UHIC's May 4, 2016 letter requesting re-authorization also includes authorization for this claim. *See* AR 001459–61. However, from a review of the record, Mr. Padway did not submit a re-authorization form. While UHIC reviewed Medical Claim #2, it did not review Medical Claim #3.

### iv. Medical Claim #4 – Dr. Christine Green Services

Mr. Sides submitted claims for services performed by Dr. Green on November 17, 2015, related to his Lyme disease. AR 001660. At issue specifically were services performed on April 1, 2015 ($600), May 20, 2015 ($600), July 10, 2015 ($700), and August 26, 2015 ($600) (the services for February 4, 2015 and February 18, 2015 do not appear to be at issue). *See* TAC ¶ 26; AR 001660–66. Similar to Medical Claim #3, UHIC sent a letter to Dr. Green on December 13, 2015 requesting the diagnosis codes for the services performed. AR 001667–69, 001755–62. UHIC requested that Dr. Green furnish the information within 45 days, and said that otherwise Mr. Sides' claims would be denied. AR 001759. Dr. Green included the diagnosis code for all but the July 10, 2015 service. AR 001652–58. On February 8, 2016, UHIC sent Mr. Sides an EOB denying the claims because it did not receive the additional information needed to process them. AR 001632–39. This claim was not included in Mr. Padway's April 8, 2016 letter.

#### v. Medical Claim #5 – Gap Exceptions

Medical Claim #5 concerns claims Mr. Sides submitted for services performed on October 21, 2015 (submitted October 29, 2015 for $600), December 16, 2015 (submitted January 18, 2016 for $350), January 20, 2016 (submitted January 20, 2016 for $600), and March 4, 2016 (submitted March 11, 2016 for $600). *See* TAC ¶ 27; AR 001677–90. These were subject to a "Gap Exception."[7] AR 001148. However, the only claim denied was for the service performed on January 20, 2016. AR 001763–66. UHIC notified Mr. Sides in its February 8, 2016 EOB that the reason for the denial was "an incorrect or inappropriate primary diagnosis code was used." *Id*.

Mr. Padway included only the October 21, 2015 gap exception claim in his April 8, 2016 letter to UHIC. AR 001147–48. As with Medical Claim #3, UHIC's May 4, 2016 requesting re-authorization also includes this claim, but Mr. Padway never submitted a re-authorization form. *See* AR 001459–61. UHIC sent another letter on May 11, 2016, regarding the October 21, 2015 gap exception claim, notifying Mr. Sides that the "questions and concerns expressed in [the April 8, 2016] correspondence do not qualify as an appeal." AR 000226. Although Mr. Sides alleges that he appealed these denials on May 4, 2016, there is no evidence of that appeal in the administrative record.[8] *See* TAC ¶ 27.

#### vi. Medical Claim #6 – Gap Exceptions for His Son

Mr. Sides attempted to apply for a gap exception for his son, also named Andrew Sides, on November 16, 2015, for services rendered by Dr. Rafael Stricker. TAC ¶ 30. On September 25, 2017, the Court granted Defendants' motion to strike this claim to the extent it seeks unpaid medical benefits to his son. Dkt. No. 134. Mr. Padway included this claim in his April 8, 2016 letter, and also requested explanations and information "relevant" to this claim. AR 001148–49.

#### vii. Medical Claim #7 – Misprocessed Claim for Son

Mr. Sides also alleges that UHIC misprocessed claims related to his son for services

---

[7] A "gap exception" is coverage at in-network rates for out-of-network services. Cisco Mot. at 6.
[8] In Mr. Sides' opposition to Cisco's Motion, Dkt. No. 191, he attaches an email exchange between Felicia Phillips from the Law Offices of Laurence F. Padway and Aimee Reed, who appears, from the domain name in the email, to work at UHIC. Dkt. No. 192-2. The email attaches an unsigned copy of a letter from Mr. Padway dated May 4, 2016. Dkt. No. 192-3. For the reasons stated earlier, the Court will not consider this evidence. Even if the Court did, the Court does not find that this constituted an appeal under the Plan.

8

performed on January 13, 2015. TAC ¶ 31. Mr. Sides alleges that he appealed these denials on April 8, 2016, but the April 8, 2016 letter does not include this claim. *See* AR 001144–49.

### viii. Medical Claim #8 – Igenex

Mr. Sides submitted the following claims for himself and his son for work performed at Igenex: July 7, 2015 (submitted July 7, 2015 for his son), July 10, 2015 (submitted August 7, 2015 for $700 for himself), August 26, 2015 (submitted September 16, 2015 for $555 for himself), December 22, 2015 (submitted January 18, 2016 for his son), and January 14, 2016 (submitted March 2, 2016 for $1,495 for himself). *See* TAC ¶ 32; AR 001712, 001721, 001739, 001741, 001744. To the extent these claims seek unpaid benefits on behalf of Mr. Sides' son, the Court will not address them. *See* Dkt. No. 134.

As to the July 10, 2015 claim, UHIC sent Mr. Sides an EOB on August 24, 2015, notifying him that all but $144.80 of his $700 claim was covered. AR 001724–28. The explanation for the $144.80 reduction was that his care was coordinated "by a non-network physician or other health care professional." AR 001727. For the August 26, 2015 claim, UHIC sent Mr. Sides an EOB on October 5, 2015, explaining that all but $38.26 of his $555 claim was covered, for the same reason given as to his July 10, 2015 claim. AR 001732. And for Mr. Sides' January 14, 2016 claim, UHIC reimbursed the entire amount. AR 001714–22. Mr. Sides states that he appealed these decisions on May 4, 2016, but the administrative record does not include evidence of this appeal. *See* TAC ¶ 36.

### ix. Medical Claim #9 – Nutritional Supplements

For Medical Claim #9, Mr. Sides does not contest a specific claim, but rather states that he requires L-Methylfolate as a result of his metabolism defect, diagnosed by Quest. TAC ¶ 37. Mr. Sides contends that he requested information from Defendants to allow him to submit this claim, but Defendants "refused." *Id*. This is not included in the April 8, 2016 letter, but only in the unsigned May 4, 2016 letter not in the administrative record.

### x. Medical Claim #10 – Delayed Claims Processing

Medical Claim #10 is also not related to a specific claim. Mr. Sides alleges that UHIC has delayed processing claims by "altering" dates received and not providing Mr. Sides with any paper

9

1  confirmations. *Id*. ¶ 38.

### xi. Medical Claim #11 – IV Services

Medical Claim #11 relates to IV services provided to Mr. Sides by Silicon Valley IV and Matsuo from September 4, 2012 to April 28, 2013, for a total of $59,658.91. TAC ¶¶ 40–41. Mr. Sides alleges that some claims were covered for the full amount billed, but some were covered only for "reasonable and customary" amounts. *Id*. Per the administrative record, the providers for these services were out of network, but they had decided to accept a reduction in charges for the claims, meaning the out of pocket portion Mr. Sides had to pay was lower. *See, e.g.*, AR 00016–24; *see also* TAC ¶ 41. Mr. Sides did not appeal these claims.

### xii. Mr. Sides' Fiduciary and Accounting Claims

In addition to the specific medical claims identified above, Mr. Sides seeks to hold Cisco responsible for failing to "maximize" his benefits by not acting to secure reimbursement from UHIC. TAC ¶ 44. Mr. Sides claims that Cisco only implemented one change to UHIC's claim processing process in 2015, when it helped "stop[] the repeated automatic change of Mr. Sides' communication preferences from mail to electronic." *Id*. ¶ 44. Mr. Sides also claims that Cisco has "ignored fraudulent behavior" from UHIC, and even participated in the "fraud" itself. *Id*. ¶ 45. This is allegedly due to a conflict of interest because Cisco is both the Plan sponsor and Plan administrator, and because Cisco's human resources team interacts with UHIC in "customer relationship and business development roles." *Id*. ¶ 46. Mr. Sides therefore seeks an injunction against Cisco to discontinue this "conflict of interest." *Id*. ¶ 47.

For his accounting claim, Mr. Sides asserts that the EOBs and other reports from 2012 and onward were erroneous and incomplete. *Id*. ¶ 48. Because of the allegedly inconsistent amounts, Mr. Sides claims he cannot determine whether medical claims have been paid. *Id*. ¶ 51.

### C. Procedural History

Mr. Sides first brought suit on August 26, 2015. Dkt. No. 1. At that time, he was represented by counsel. Mr. Sides then filed an amended complaint on February 2, 2016, before Defendants had filed any dispositive motions. *See* Dkt. No. 20. Mr. Sides filed his second amended complaint, with the agreement of all parties, on August 19, 2016. Dkt. Nos. 43, 44. Mr.

Sides then proceeded *pro se*, Dkt. No. 47, and the parties again agreed to permit him to amend his complaint. Dkt. No. 55. Mr. Sides filed his TAC on November 14, 2016, and the Court warned him that no "further requests to amend will be considered." Dkt. Nos. 56, 57.

Mr. Sides' TAC asserts ten causes of action. TAC ¶¶ 52–85. The first seeks benefits under ERISA § 502(a)(3). *Id*. ¶¶ 52–54. The rest seek variations of declaratory and injunctive relief related to the alleged mishandling of Mr. Sides' medical claims.[9] *Id*. ¶¶ 55–85.

## II. LEGAL STANDARD

ERISA provides claimants with a federal cause of action to recover benefits due under an ERISA plan. 29 U.S.C. § 1132(a)(1)(B). "ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations omitted). ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). "ERISA's civil-enforcement provision . . . allows a claimant 'to recover benefits due to him under the terms of his plan [and] to enforce his rights under the terms of the plan.'" *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) (quoting 29 U.S.C. § 1132(a)(1)(B)).

Generally, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115 (emphasis added). When a plan "expressly and unambiguously gives the administrator discretion to determine eligibility," the administrator's decision is reviewed for abuse of discretion, rather than de novo. *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673 (9th Cir. 2011).

## III. FINDINGS OF LAW

Defendants argue that the abuse of discretion standard should be used here, as the Plan "confers discretionary authority on the claims administrator." Cisco Mot. at 10; *see also* UHIC

---

[9] The Court dismissed the third cause of action for statutory penalties without leave to amend. Dkt. No. 134.

11

Mot. at 6 ("Here, the Plan unambiguously grants United "'discretionary authority.'"). Mr. Sides argues that a de novo standard should be used "to try to bridge the large gaps created from the woefully inadequate Administrative Record from UHIC, and Plan documents from Cisco." Dkt. No. 191, Response to Cisco's Rule 52 Motion ("Pl. Opp. Cisco Mot.") at 10. Because the Plan documents explicitly and unambiguously confer to UHIC the "discretionary authority to interpret the terms of the plans, and to determine the eligibility for benefit payment," Ex. 2 at CIS 000355, the Court will review its decisions only for an abuse of discretion. *See Salomaa*, 642 F.3d at 673; *see also* Dkt. No. 155.

Under this standard, a decision is "not arbitrary unless it is not grounded on any reasonable basis." *Salomaa*, 642 F.3d at 673 (citation and quotations omitted). The abuse of discretion standard requires the court to give "significant deference" to the administrator's decision. *Voight v. Metro. Life Ins. Co.*, 28 F. Supp. 2d 569, 576 (C.D. Cal. 1998). Even if the decision is "directly contrary to some evidence in the record," this is not enough to show the decision was clearly erroneous. *Id.* (citation and quotations omitted). Rather, "review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 623 (1993). Factors that a court considers include whether the administrator provided an explanation of the decision, whether the decision conflicts with the plain language of the plan, whether the fiduciary made a clearly erroneous finding of fact, and whether the fiduciary was operating under a conflict of interest. *Voight*, 28 F. Supp. 2d at 576. *Id.* (citing cases).

Applying this standard, the Court finds that Mr. Sides has not shown through substantial evidence that UHIC's decisions were clearly erroneous. The Court reaches this conclusion after careful consideration of the administrative record. The most important considerations ultimately favoring Defendants are articulated below.

### A. Denial of Medical Claims

Mr. Sides' first cause of action seeks the benefits he alleges were denied, under ERISA § 502(a)(1)(B). Based on the record, the Court cannot find that UHIC's decision to deny the

12

claims at issue was clearly erroneous or not supported by substantial evidence. *See id*. at 580.

### i. Exhaustion Doctrine

The Ninth Circuit established a general rule that a claimant "must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz v. United Agr. Employee Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995). This "exhaustion doctrine" is consistent with ERISA's "background, structure and legislative history," and serves the important policy consideration of reducing frivolous litigation. *Id*. "Consequently the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and [ ] as a matter of sound policy they should usually do so." *Id*. (citation and quotations omitted and brackets in original).

The administrative record reveals that Mr. Sides did not properly exhaust administrative remedies for any of the benefits at issue. Under the terms of the Plan, Mr. Sides must go through the first two levels of review before pursuing legal action against Defendants. Ex. 2 at CIS 000364. Even if the April 8, 2016 letter could be construed as an appeal regarding Mr. Sides' Medical Claims #2, 3, and 5, UHIC responded to Mr. Padway and asked him to re-submit a form establishing that Mr. Padway was authorized to pursue the claims on Mr. Sides' behalf. AR 001459–61. There is no evidence in the administrative record, nor does Mr. Sides argue, that Mr. Padway submitted the proper form. Further, UHIC did review Mr. Sides' Medical Claim #2 and provided an explanation, including supporting citations to the Plan, for why his lab panel claim was denied. AR 001072. UHIC also gave instructions on how to obtain a second level review. AR 001073. There is no evidence in the administrative record that there was a second level appeal for Medical Claim #2, and Mr. Sides does not argue otherwise.[10]

Mr. Sides contends that appealing was futile because it was UHIC and Cisco that "made

---

[10] The Court notes the confusion of UHIC's May 4, 2016 letter requiring re-authorization yet only reviewing Medical Claim #2. *See* Cisco Mot. at 13 ("UHIC concluded that the April 8, 2016 letter constituted an appeal with respect to the [Medical Claim #2] only, and addressed that claim in its May 11, 2016 letter to Plaintiff upholding its denial."). The Court recognizes this may be a result of the confusing verbiage in Mr. Padway's letter: Mr. Sides himself described the letter as a "conditional appeal." Pl. Opp. Cisco Mot. at 6. However, as explained below in Section III(A)(ii), *infra*, even if Mr. Sides exhausted his administrative remedies, UHIC did not abuse its discretion in denying the claims.

13

the exhaustion of administrative remedies impossible." Pl. Opp. Cisco Mot. at 5. Mr. Sides claims that the April 8, 2016 letter was a "conditional appeal," and he did not actually want to appeal until UHIC provided the requested documents. *Id.* at 6. In fact, Mr. Sides asserts that UHIC had "no right to" move forward with the first level appeal of Medical Claim #2. *Id.* But Mr. Sides does not specify exactly what information UHIC failed to provide him so that he could make a proper appeal. The record includes general requests for documents "relevant" to the denial of claims, but each of the EOBs UHIC provided gave an explanation as to why the benefits were denied. *See, e.g.*, AR 001158–66 (lab panels were unproven for the management of Mr. Sides' condition); AR 001615 (missing requested information); AR 001763–66 (incorrect code used). Mr. Sides' argument is circular, and "bare assertions of futility are insufficient to bring a claim within the futility exception." *Diaz*, 50 F.3d 1478.

Because the Court finds that Mr. Sides did not exhaust his administrative remedies under the Plan, UHIC's determinations as to Mr. Sides' Medical Claims #1-11 are final and binding. *See* Ex. 2 at CIS 000357.

### ii. Abuse of Discretion[11]

Even if Mr. Sides had exhausted his administrative remedies, he has not demonstrated that UHIC was clearly erroneous in making the determination to deny his claims. Medical Claims #1–2 were denied because these claims were "unproven for the management of [Mr. Sides'] condition." AR 001207, AR 001164. This is consistent with the terms of the Plan, which covers experimental treatment only if the "care or treatment proposed is effective for that disease or illness, or shows promise of being effective for that diseases or illness as demonstrated by scientific data." Ex. 2 at CIS 000303. Mr. Sides did not provide the requested information. He now asserts that an earlier EOB from November 4, 2013 provided "medical justification" for these claims, and that UHIC "should have used [the 2013 EOB]" when processing Medical Claims #1–2. Pl. Opp. Cisco. Mot. at 4. The Court is not persuaded that an EOB from a year earlier would have provided justification for current medical claims. Moreover, if Mr. Sides believed this, it is

---

[11] Pursuant to its September 25, 2017 Order, Dkt. No. 134, the Court dismisses the claims for benefits (Medical Claims #6–7) for Mr. Sides' son.

14

unclear why he would not have submitted that information to UHIC when it requested proof that the lab panel work was effective for his condition.

As to Medical Claims #3–5 and 8, UHIC denied these claims because the providers did not furnish the necessary requested information or an incorrect code was used. AR 001615, AR 001623–39, AR 001763–66. This is consistent with the requirements outlined in the Plan, which requires, *inter alia*, a "patient diagnosis, the date(s) of service, the procedure code(s) and description of the service(s) rendered, charge for each service rendered," and "date(s) on which the injury or sickness began." Ex. 2 at CIS 000366. Further, a large portion of Mr. Sides' Medical Claim #8 was covered, and the reason for the $144.80 and $38.26 charges for two of his claims was that the physician was out of network. AR 001727, AR 001732. Mr. Sides claims that these are "bogus codes," Pl. Opp. Cisco Mot. at 16, and that the codes do not meet the "ERISA requirements for EOBs, that they are simple to understand." Pl. Mot. at 16. But each of the codes has an explanation that describes why the benefits were denied, and in many instances, it appears the denials easily could have been remedied by providing the requested information.

As to Medical Claims #9–10, Mr. Sides does not provide any specific evidence as to what the claims were.[12] For Medical Claim #11, he claims that all the IV services from a period of almost 8 months were improperly denied, but does not provide any specific support. TAC ¶ 40. The administrative record reflects that portions not covered by the Plan were because the providers were out of network. *See, e.g.*, AR 000016–24. Mr. Sides has not adequately demonstrated that this decision was clearly erroneous.

The Court finds that UHIC provided explanations of its decisions that did not conflict with the plain language of the Plan, were supported by substantial evidence, and were not clearly

---

[12] For example, for Medical Claim #9, Mr. Sides alleges that he requires L-Methylfolate because of a metabolism defect, but shows no support that costs for this medication were ever submitted for reimbursement or denied. *See* TAC ¶ 37. In his motion and opposition, Mr. Sides merely cites the Plan listing what is not covered, which includes nutritional and food supplements except "when it's the sole source of nutrition or it specifically treats an inborn error of metabolism". Pl. Mot. at 34; Ex. 2 at CIS 000318. It appears that Mr. Sides is alleging L-Methylfolate should be covered under the exception, but claims that it is impossible to get a supplement code to present "a medical argument for why a food or a supplement meets the criteria (which are?)." Pl. Mot. at 35. Mr. Sides does not provide any evidence to support his assertion that it would be impossible to receive this code, or explain how this is relevant to the claim at issue.

15

erroneous. Mr. Sides has not shown otherwise. *See Voight*, 28 F. Supp. 2d at 576.

## B. Equitable Relief

ERISA § 502(a)(1)(B) permits an ERISA participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA's catch-all provision, § 502(a)(3), permits an action by a participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

The Supreme Court has recognized that "where Congress elsewhere provide[s] adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). In the Ninth Circuit, a plaintiff may bring a claim for "individual relief for a breach of fiduciary duty in an ERISA action [under § 502(a)(3)] only where no other adequate relief is available." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir.1997) *aff'd*, 525 U.S. 299, 119 (1999) *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012). Courts in this district have found § 502(a)(3) claims cognizable in conjunction with § 502(a)(1)(B) claims "particularly where the relief sought in connection with each claim is distinct." *Id*.

To the extent Mr. Sides' requests for relief under § 502(a)(3) are adequately provided for by another ERISA subsection, those must be denied. *See Englert v. Prudential Ins. Co. of Am.*, 186 F. Supp. 3d 1044, 1048 (N.D. Cal. 2016).

### i. Equivalent Relief Under § 502(a)(1)

By Mr. Sides' own admission, the second, fourth, fifth, sixth, eighth, and tenth claims all "pertain" to Medical Claims #1–11. *See, e.g.*, TAC ¶ 57. Mr. Sides' requests for equitable relief include an injunction to stop the "systemic misprocessing of claims going forward," *id*. ¶ 57, written or electronic notice that his Gap Exception for Medical Claim #5 was granted, *id*. ¶ 66, notifications of the benefit determination related to Medical Claim #10, *id*. ¶ 69, an injunction

16

requiring Cisco to "stop the systemic misprocessing of Mr. Sides' claims," *id*. ¶ 73, proper accounting for his claims, *id*. ¶ 79, and proper notification of any adverse determinations of his claims, *id*. ¶ 85.

Mr. Sides contends that these are not duplicative because while he seeks to have specific claims paid under § 502(a)(1), "being always paid has not resulted in any systemic change." Pl. Opp. Cisco Mot. at 24. Mr. Sides misses the point. These requests are nothing more than a repackaging of his § 502(a)(1) claims, as they all pertain to the denial and handling of his Medical Claims #1–11. Mr. Sides is essentially asking the Court to "enforce his rights under the terms of the plan," and to provide him with the benefits he believes is due under the Plan, relief which is granted by § 502(a)(1). 29 U.S.C. § 1132 (a)(1)(B); *see Englert*, 186 F. Supp. 3d at 1048–49 (plaintiff's request for an injunction preventing defendant from terminating benefits is nothing more than a plea to clarify plaintiff's rights, relief available under § 502(a)(1), and therefore plaintiff cannot seek this relief under § 502(a)(3)). As such, Mr. Sides' claims for equitable relief as to his second, fourth, fifth, sixth, eighth, and tenth claims are denied.[13]

### ii. Breach of Fiduciary Duties

Mr. Sides' sixth, seventh, and ninth claims relate to Defendants' alleged breach of fiduciary duties, including their duty to "disclose and inform," their "monitoring" duties, and their duty to "maximize" Mr. Sides' benefits. TAC ¶ 71–76, 81–82.

Mr. Sides has not provided any specific details or evidence as to how Cisco and UHIC breached their fiduciary duties, nor does Mr. Sides point to any caselaw to support his contentions. *See* Pl. Opp. Cisco Mot. at 18 ("ERISA states a number of the requirements for fiduciaries, but fails to tie this together in a simple, conceptual way."). His support for the allegation that Cisco should "maximize" his benefits comes from his recollection that "he read or heard the use of 'maximize' as a simplification/summary of these duties." *Id*. at 19. However, Mr. Sides' own operative complaint notes that Cisco has "helped Mr. Sides secure reimbursement from [UHIC], but this has taken ridiculous amounts of time." TAC ¶ 44. He also concedes that he has "received

---

[13] Even to the extent these claims are not duplicative of the relief available under § 502(a)(1), they fail for the reasons described in Section III(B)(iii), *infra*.

17

full coverage and reimbursement in the vast number of times that he has disputed claims and benefits with [UHIC]." *Id*. ¶ 45. Although Mr. Sides alleges that Cisco engaged in fraud and ignored fraudulent behavior from UHIC, *id*. ¶ 45, based on the administrative record, the Court finds no evidence supporting this assertion. Mr. Sides instead proffers that "context is everything" and cites from an email (that was not properly introduced into the record) between him and a Cisco representative as proof.[14] Pl. Opp. to Cisco. Mot. at 20–21.

Mr. Sides argues that Cisco was unable to perform its duties due to a conflict of interest because of Cisco's role as Plan sponsor and Plan administrator. *Id*. ¶ 46. But as the Supreme Court noted, this in itself is not a conflict of interest: Cisco's fiduciary duties under ERISA "are implicated only when it acts in the latter capacity [as Plan administrator] [] ... [w]hich hat the employer is proverbially wearing depends upon the nature of the function performed." *See Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007). There is no evidence that Cisco was unable to perform its duties as Plan administrator because it was also a Plan sponsor. Mr. Sides also fails to present any evidence as to how Cisco's human resources team's relationship with UHIC, in terms of "customer relationship and business development," would create a conflict that would impinge their fiduciary duties. *See* TAC ¶ 46.

### iii. Mr. Sides Seeks Relief That Is Not Authorized Under ERISA or Feasible

In the Court's Order limiting discovery to the administrative record, the Court noted that:

> Plaintiff provides a nonexhaustive list of relief sought in order to bring Defendant to "full ERISA compliance," including ordering Defendants to: (1) have medical claims audited for the next five years; (2) include a services level agreement in their contracts; (3) provide a complete list of documents under which the plan is administered and operated; (4) remove conflicts of interest by preventing medical directors from pursuing sales and/or business objectives; and (5) carry out their supervisory fiduciary responsibilities to monitor benefits accounting.

Dkt. No. 155 at 3. Mr. Sides is also requesting that Defendants provide "visibility into the processing of a claim from time of receipt to final settlement." TAC at 27. The Court understands

---

[14] As explained above, Mr. Sides' exhibits are not part of the record. Even so, Mr. Sides' cited exhibit contradicts his own point: the Cisco representative says that she is "happy to and will do what [she] can to drive this process to a point of satisfaction for you." Pl. Opp. Cisco Mot. at 21.

that Mr. Sides is frustrated with the claims process, and also understands that dealing with a benefits bureaucracy can be tiresome, but agrees with Defendants that Mr. Sides' requested relief is "unworkable and incurably imprecise." Cisco Mot. at 23 (citing *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1284 (N.D. Cal. 2012)); *see also* UHIC Mot. at 19. The requested relief does not "describe in reasonable detail" what exactly is being required of Defendants. *See Brady*, 902 F. Supp. 2d at 1284 ("Courts have declined injunctive relief where the injunction sought is of such an indeterminate character that an enjoined party cannot readily determine what conduct is being prohibited."). Mr. Sides does not describe how any of his requested relief, such as auditing his medical claims and removing conflicts of interest by preventing medical directors from pursuing sales or business objectives, would be implemented, let alone how these would remediate his alleged injuries. *See* Cisco Mot. at 24. Further, Mr. Sides does not consider how his requested relief, such as implementing a process that allows him visibility into and access to claims processing, would implicate other federal laws and regulations (*e.g.* those going to privacy issues and differential treatment of Plan participants).

## IV.   CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' motions for judgment under FRCP 52(a), **GRANTS** Plaintiff's motion to file excess pages, and **DENIES** Plaintiff's motion for judgment under FRCP 52(a). The Court directs the Clerk of the Court to enter judgment in Defendants' favor and against Plaintiff and to close the case.

**IT IS SO ORDERED.**

Dated: 3/27/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge